UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | |
|---|---|
| MARTIN RICO MURILLO,<br>AGEO AVELINO NAEZ,<br>AGUSTIN ANDRES JUANA,<br>HECTOR SANTIAGO BAUTISTA,<br>JOSE ISABEL PABLO VELAZQUEZ,<br>ESTEBAN MARCOS REYES,<br>JUAN REYES SERNA,<br>PABLO JAGUADA LOPEZ,<br>AGAPITO MANUEL PEREZ,<br>DANIEL GONZALEZ COBARRUVIAS,<br>ALBERTO COVARRUBIAS GONZALEZ,<br>PANTALEON ALVAREZ CERVANTES,<br>PEDRO NEPAMUCENO EPIFANIO,<br>ERNESTO NEPAMUCENO EPIFANIO,<br>ZENOBIO CERVANTES GUMECINDO,<br>ANTONIO GONZALEZ HERNANDEZ,<br>ELEAZAR MANUEL OTERO,<br>HECTOR GONZALEZ HERNANDEZ,<br>MARIO LORENZO CHAVEZ,<br>NAU GONZALEZ MENDOZA,<br>JOSE HERNANDEZ MARCOS,<br>JULIO RUBIO CABRERA,<br>J. GUADALUPE AVELINO NAIZ,<br>and<br>CAIN GONZALEZ COVARRUBIAS,<br><br>          Plaintiffs,<br><br>vs.<br><br>TRACY DILLARD,<br>BRUCE DILLARD,<br>and<br>CAROLYN DILLARD,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. 1:15-cv-69-GNS**<br>)   **Judge Stivers**<br>)   **Magistrate Judge Brennenstuhl**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT

1.      This is an action to recover damages for unpaid minimum wages and breach of contract brought by 24 Mexican farmworkers ("the Farmworkers") who were brought to the United States under the federal H-2A visa program to perform agricultural work planting and harvesting tobacco for Defendants Tracy Dillard, Bruce Dillard, and Carolyn Dillard in 2014 and 2015. Plaintiff Farmworkers came to the United States lawfully, expending sums of money or taking out personal loans to pay for the costs of visas and transportation, spurred by promises made by Defendants concerning good wages and the type of work that would be performed on their farm.

2.      After arrival, the Farmworkers were taken advantage of by Defendants' violations of federal law, as well as by Defendant Tracy Dillard's consistent violations of the terms of his employment contracts with the Farmworkers. Defendants paid the Farmworkers using a piece-rate system that was inconsistent with what was promised in their contracts and that did not pay the Farmworkers at all for certain tasks that were indispensable to Defendants' operations. This payment scheme systematically resulted in the Farmworkers earning wages below both the federal minimum wage and the adverse effect wage rate ("AEWR"), which was the higher contractual wage rate mandated by federal law promised to the Farmworkers in their contract. Defendants compounded these problems by failing to provide the Farmworkers with clear pay statements explaining the basis of their pay and as required by law.

2

3.      In 2012, Dillard Farms employed U.S. workers to harvest tobacco. That year, the U.S. Department of Labor ("DOL") investigated Dillard Farms, which was operated by Defendants at the same address as the farm at issue in the present Complaint. That DOL investigation cited Dillard Farms for nearly the same violations alleged by the Farmworkers, including failing to pay the U.S. workers the minimum wage required under the Fair Labor Standards Act ("FLSA"), failure to keep required payroll records, and failure to pay wages when due. Despite Dillard Farms' having agreed to comply with the law in the future, the Farmworkers' allegations indicate that Defendants did not do so and that Defendants simply moved from hiring U.S. workers to using H-2A workers instead.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the Farmworkers' FLSA claims pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1337 (actions arising under Acts of Congress regulating commerce).

5.      This Court has jurisdiction over the Farmworkers' contract claims pursuant to 28 U.S.C. § 1331. The claims turn on substantial questions of federal law. The Court also has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Bowling Green Division of the U.S. District Court for the Western District of Kentucky.

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

9.     Each Plaintiff is a citizen of Mexico who, at all times relevant herein, was lawfully admitted to the United States on a temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a), commonly referred to as the "H-2A program."

10.     Defendant Tracy Dillard is a natural person residing in Fountain Run, in Monroe County, Kentucky. On information and belief, Tracy Dillard's principal place of business is Monroe County, Kentucky.

11.     Defendant Bruce Dillard is a natural person residing in Fountain Run, in Monroe County, Kentucky. On information and belief, Bruce Dillard's principal place of business is Monroe County, Kentucky.

12.     Defendant Carolyn Dillard is a natural person residing in Fountain Run, in Monroe County, Kentucky. On information and belief, Carolyn Dillard's principal place of business is Monroe County, Kentucky.

13.     Defendants own or operate tobacco fields and sheds in Monroe County, Kentucky and in surrounding areas.

## FACTS

14.     An agricultural employer in the United States may import foreign workers to perform labor of a temporary nature if DOL certifies that: (1) there are

4

insufficient available workers within the United States to perform the job; and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1188(a)(1). Foreign workers admitted to the United States in this fashion are commonly referred to as "H-2A workers."

15.     Agricultural employers seeking admission of H-2A workers must first file a temporary employment certification application with DOL, pursuant to 20 C.F.R. § 655.130.

16.     This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations, which is used in the recruitment of both U.S. and H-2A workers. 20 C.F.R. § 655.121(a)–(c). The H-2A regulations establish the minimum benefits, wages, and working conditions that must be offered to avoid adversely affecting U.S. workers. 20 C.F.R. §§ 655.0(a)(2), 655.122, 655.135.

17.     Claiming a lack of available U.S. agricultural workers in his area of operation, Defendant Tracy Dillard filed two applications to employ temporary foreign workers through the H-2A program during the 2014-2015 tobacco season.

18.     Defendant Tracy Dillard's initial temporary labor certification application for the 2014-2015 season sought admission of eight workers for employment from May 10, 2014 to February 28, 2015, and was anticipated to provide workers with an average of 40 hours of employment per week.

19.    Defendant Tracy Dillard later submitted a second temporary labor certification application for the 2014-2015 season seeking admission of 22 additional workers for employment from July 15, 2014 to February 28, 2015. This labor certification application anticipated providing workers with an average of 40 hours per week.

20.    As part of his temporary labor certification applications — described in paragraphs 17, 18, and 19 — Defendant Tracy Dillard included job offers, commonly referred to as "clearance orders" or "job orders," purporting to comply with applicable H–2A regulations, which are used in the recruitment of both U.S. and H–2A workers. 20 C.F.R. § 655.121(a)–(c).

21.     The clearance orders submitted to DOL by Defendant Tracy Dillard contained a certification that the clearance orders encompassed all material terms and conditions of the job and described the actual terms and conditions of employment being offered, as required by 20 C.F.R. § 653.501(d)(3).

22.    Defendant Tracy Dillard's temporary labor certification applications, as described in paragraphs 17, 18, 19, 20, and 21, explicitly and implicitly incorporated DOL regulations at 20 C.F.R. § 655 Subpart B. DOL accepted Defendant Tracy Dillard's clearance orders filed with respect to the 2014-2015 tobacco season as described in paragraphs 17, 18, 19, 20, and 21. Defendant Tracy Dillard was eventually granted permission by DOL to begin the visa process of importing foreign laborers.

23.     The U.S. Customs and Immigration Services of the Department of Homeland Security ultimately issued H-2A visas to fill the labor needs described in Defendant Tracy Dillard's clearance orders.

24.     In total, Defendant Tracy Dillard recruited 30 H-2A workers, including each of the named Farmworkers, from Mexico to fill the positions offered in the clearance orders for the 2014-2015 tobacco season.

25.     Defendants employed approximately seven other non-H-2A workers in their tobacco fields during the 2014-2015 season.

26.     Plaintiffs Pantaleon Alvarez Cervantes, Ageo Avelino Naez, Hector Santiago Bautista, Agustin Andres Juana, J. Guadalupe Avelino Naiz, and Zenobio Cervantes Gumecindo arrived at Defendants' farm in Kentucky on or about May 18, 2014 and commenced working for Defendants on or about May 19, 2014.

27.     Plaintiffs Martin Rico Murillo, Jose Isabel Pablo Velazquez, Esteban Marcos Reyes, Juan Reyes Serna, Pablo Jaguada Lopez, Agapito Manuel Perez, Ernesto Nepamuceno Epifanio, Pedro Nepamuceno Epifanio, Antonio Gonzalez Hernandez, Eleazar Manuel Otero, Cain Gonzalez Covarrubias, Hector Gonzalez Hernandez, Alberto Covarrubias Gonzalez, Mario Lorenzo Chavez, Daniel Gonzalez Cobarruvias, Jose Hernandez Marcos, Julio Rubio Cabrera, and Nau Gonzalez Mendoza arrived at Defendants' farm in Kentucky on or about August 15, 2014, and commenced working for Defendants on or about August 18, 2014.

28.     To reach Defendants' farm, the Farmworkers were required to pay various fees and expenses, including, but not limited to, visa fees and transportation expenses from their hometowns in Mexico.

29.     The Farmworkers also paid for some or all of their own transportation costs incurred in returning to their homes in Mexico after their work contracts ended.

30.     In order to secure employment with Defendants, several of the Farmworkers took out loans to pay for these fees and expenses related to their H-2A visas and travel to Kentucky.

31.     But for Plaintiffs' employment with Defendants, Plaintiffs would not have incurred the expenses described in paragraph 28.

32.     The expenses incurred by Plaintiffs described in paragraph 28 were necessary to Plaintiffs' employment with Defendants.

33.     The expenses incurred by Plaintiffs described in paragraph 28 primarily benefitted Defendants.

34.     Defendants did not fully reimburse Plaintiffs for the expenses described in paragraph 28.

35.     The expenses described in paragraph 28 functioned as *de facto* deductions from Plaintiffs' wages during their first work week with Defendants in 2014.

36.     The deductions described in paragraph 28 caused Plaintiffs to earn less than the AEWR and the federally mandated minimum wage during their first workweek with Defendants in 2014.

37.     Plaintiffs Pantaleon Alvarez Cervantes, Ageo Avelino Naez, Hector Santiago Bautista, Agustin Andres Juana, J. Guadalupe Avelino Naiz, and Zenobio Cervantes Gumecindo were hired pursuant to Defendant Tracy Dillard's first temporary labor certification application described in paragraph 18 and were employed by Defendants to work in Defendants' tobacco fields from May 2014 to February 2015.

38.     Plaintiffs Martin Rico Murillo, Jose Isabel Pablo Velazquez, Esteban Marcos Reyes, Juan Reyes Serna, Pablo Jaguada Lopez, Agapito Manuel Perez, Ernesto Nepamuceno Epifanio, Pedro Nepamuceno Epifanio, Antonio Gonzalez Hernandez, Eleazar Manuel Otero, Cain Gonzalez Covarrubias, Hector Gonzalez Hernandez, Alberto Covarrubias Gonzalez, Mario Lorenzo Chavez, Daniel Gonzalez Cobarruvias, Jose Hernandez Marcos, Julio Rubio Cabrera, and Nau Gonzalez Mendoza were hired pursuant to Defendant Tracy Dillard's second temporary labor certification application described in paragraph 19 and were employed by Defendants to work in Defendants' tobacco fields from August 2014 to February 2015.

39.     During the 2014-2015 season, Defendants shared responsibility for giving orders to the Farmworkers and other employees of the farm through a foreman, who translated Defendants' orders into Spanish.

40.     Defendant Carolyn Dillard regularly supervised work done by the Farmworkers and sometimes admonished them for work that was not completed to her satisfaction.

41.     Defendants Tracy Dillard and Bruce Dillard had the right to fire workers.

42.     Defendants Tracy Dillard and Bruce Dillard were involved in preparing land on the farm for planting and other tobacco operations.

43.     During their time working on Defendants' farm, the Farmworkers were paid by checks issued from an account in the name of Defendant Tracy Dillard.

44.     Defendant Carolyn Dillard signed many of the checks from Defendant Tracy Dillard's account that were delivered to the Farmworkers.

45.     Defendant Carolyn Dillard regularly delivered the signed checks to the Farmworkers.

46.     Defendants were responsible for setting the method and timing of payment to the Farmworkers during the 2014-2015 season.

47.     Defendants co-owned property, such as farm equipment, used for the benefit of the farm.

48.     Loans taken out jointly by Defendants for benefit of the farm were secured using property of and proceeds from the farming operation.

49.     While working for Defendants in 2014 and 2015, the Farmworkers were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(g).

50.     At all times relevant to this action, each Farmworker was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e).

51.     At all times relevant to this action, each Farmworker was an "employee" and an "H-2A worker" of Defendant Tracy Dillard within the meaning of 20 C.F.R. § 655.103(b).

52.     At all times relevant to this action, Defendants were the "employers" of each Farmworker within the meaning of the FLSA, 29 U.S.C. § 203(d).

53.     At all times relevant to this action, Defendant Tracy Dillard was the "employer" of each Farmworker within the meaning of 20 C.F.R. § 655.103(b).

54.     While working for Defendants in 2014 and 2015, the Farmworkers were engaged in the production of goods for commerce within the meaning of that phrase as it is used in the FLSA.

55.     By choosing to voluntarily participate in the H-2A program in 2014 and 2015, Defendant Tracy Dillard was liable for complying with all federal regulations that pertain to the H-2A program.

56.     The terms of the work contracts under which Defendant Tracy Dillard employed the Farmworkers was determined and controlled, in part, by federal law.

57.     The terms of work offered by Defendant Tracy Dillard to the Farmworkers in the 2014-2015 season included, among other things:

> i. The terms offered in the clearance orders described in paragraphs 17−22 except insofar as the clearance order terms deviated from federal law;

ii. The contents required by law to be contained in all H-2A job offers as set forth in the regulations governing the Farmworkers' visas, 20 C.F.R. § 655.122; and

iii. The legally required assurance of obligations of H-2A employers as set forth in 20 C.F.R. § 655.135.

58.   Specifically, the Farmworkers' work contracts offered, among other things, the following terms:

i. Wages equal to the higher of the AEWR, which was $10.10 per hour in Kentucky from January 7, 2014 to December 18, 2014 and was $10.28 per hour in Kentucky from December 19, 2014 through the end of the contract; the prevailing hourly wage rate; the prevailing piece-rate; or the FLSA minimum wage rate;

ii. Payment weekly and payment when wages were due;

iii. A guaranteed minimum amount of work or wages for 3/4 of the period running from the first workday to the end date specified in the clearance order;

iv. Housing, at no cost to the workers, that met DOL Occupational Safety and Health Administration ("OSHA") migrant housing standards, 29 C.F.R. § 1910.142;

v. Maintenance of accurate and adequate records with respect to workers' earnings, including field tally records, supporting

summary payroll records, records showing the nature and amount of work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by the worker, the time the worker began and ended each workday, the rate of pay, the worker's earnings each pay period, the worker's home address, and the amount of and reasons for any and all deductions taken from the worker's wages;

vi.   The availability of earnings records for inspection and transcription by the Farmworkers' and their representatives within 72 hours, upon proper request;

vii.   Pay stubs with the worker's total earnings for the pay period, the worker's hourly rate and piece rate of pay, the hours of employment offered to the worker, the hours actually worked by the worker, an itemization of all deductions made from the worker's wages, the units produced daily if piece rates are used, the beginning and ending dates of the pay period, and the employer's name, address and federal employer identification number ("FEIN");

viii.   Reimbursement, at the 50%-point of the contract's term, to the Farmworkers of the reasonable costs of transportation and subsistence incurred by the Farmworkers in traveling from their homes in Mexico to Defendant Tracy Dillard's farm in Kentucky; and

ix.  Payment to the Farmworkers for homebound costs of
transportation and subsistence from Defendant Tracy Dillard's
farm in Kentucky to the Farmworkers' homes in Mexico at the end
of the contract.

59.   Defendants did not fully reimburse the Farmworkers for the inbound
expenses described in paragraph 28 during their first workweek.

60.   During the 2014-2015 season, the work for which Defendants paid the
Farmworkers was primarily paid according to a piece rate, except for work done
early in the season planting tobacco.

61.   During the 2014-2015 season, Defendant Tracy Dillard provided
housing to the Farmworkers that did not comply with applicable housing
regulations.

62.   Among other housing deficiencies, Defendant Tracy Dillard failed to
provide adequate beds and did not maintain toilet facilities in a sanitary condition,
resulting in plumbing that leaked standing sewage in one housing site. The
Farmworkers' housing was also infested with rats and other vermin. Additionally,
the housing sites were not sufficiently ventilated or heated during periods of
significant heat and cold.

63.   During the Farmworkers' employment, Defendant Tracy Dillard failed
to comply with the terms and conditions of employment offered to the Farmworkers
in the clearance order submitted to DOL and with the H–2A regulations governing

14

the Farmworkers' contracts at 20 C.F.R. § 655.122 and § 655.135.

64.     During the Farmworkers' employment, Defendant Tracy Dillard:

i.  Failed to pay the Farmworkers wages equal to the higher of the AEWR, the prevailing hourly wage rate, or the FLSA minimum wage rate in compensation for all of the Farmworkers' hours worked;

ii.  Failed to pay the Farmworkers on a weekly basis and when wages were due;

iii.  Failed to offer the Farmworkers a minimum amount of work or wages for 3/4 of the period running from the first workday to the end date specified in the clearance order;

iv.  Failed to provide the Farmworkers with housing that met DOL OSHA standards;

v.  Upon information and belief, failed to maintain accurate and adequate records with respect to each Farmworker's earnings, including field tally records, supporting summary payroll records, records showing the nature and amount of the work performed, the number of hours of work offered each day by the employer, the hours actually worked each day by each Farmworker, the time each Farmworker began and ended each workday, the rate of pay, each Farmworker's earnings per pay period, each Farmworker's home address, and the amount of and reasons for any and all deductions

taken from each Farmworker's wages;

    vi.   Failed to provide pay stubs to each Farmworker with the Farmworker's total earnings for the pay period, the Farmworker's hourly rate and piece rate of pay, the hours of employment offered to the Farmworker, the hours actually worked by the Farmworker, an itemization of all deductions made from the Farmworker's wages, the units produced daily piece rates were used, the beginning and ending dates of the pay period, and the employer's name, address, and FEIN;

   vii.   Failed to reimburse the Farmworkers at the 50%-point of the contract's term for their reasonable inbound travel and subsistence expenses in traveling from their homes in Mexico to Defendants' farm in Kentucky; and

  viii.   Failed to fully pay the Farmworkers at the end of the contract for their homebound transportation and subsistence expenses for travel from their Defendants' farm in Kentucky to the Farmworkers' homes in Mexico.

65.    Defendants paid Farmworkers on a piece rate of $.45 per piece for work cutting tobacco and $.38 per piece for work stripping tobacco. The $.45 piece-rate was the same rate that had resulted in minimum wage violations, according to the 2012 DOL investigation of Dillard Farms.

66.    Because Defendants paid the Farmworkers on a piece-rate basis, the

Farmworkers were not compensated for all the hours they worked, including time spent raising, hanging, lowering, or packing tobacco, and for compensable driving time, including time spent driving between fields.

67.     Plaintiff Martin Rico Murillo was not compensated for time he was employed by Defendants to transport other workers to and from Defendants' tobacco fields.

68.     When paid on a piece rate, the Farmworkers' earnings often totaled less than the amount due under the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a).

69.     When paying workers on a piece-rate basis, Defendants frequently failed to supplement the weekly earnings of the Farmworkers as required by the minimum wage provisions of the FLSA so as to ensure that these workers' pay period earnings were at least equal to the minimum wage required by the FLSA, 29 U.S.C. § 206(a).

70.     For various workweeks, Defendants did not pay the Farmworkers at least the minimum wage for each workweek during which the Farmworkers were employed. The Farmworkers are therefore entitled to relief pursuant to the FLSA, 29 U.S.C. § 216(b).

71.     The total wages earned by the Farmworkers during their employment with Defendant Tracy Dillard in the 2014-2015 season were less than the amount owed if the Farmworkers had been properly paid for hours totaling 3/4 of the promised hours for the period running from their first workday to the end date

17

specified in the clearance order as guaranteed by their contract with Defendant Tracy Dillard.

72.     Upon information and belief, Defendants failed to maintain pay records as required by the FLSA, 29 U.S.C. § 211(c).

73.     Plaintiffs Martin Rico Murillo, Ageo Avelino Naez, Pantaleon Cervantez, Agustin Andres Juana, Hector Santiago Bautista, Jose Isabel Pablo Velazquez, Esteban Marcos Reyes, Juan Reyes Serna, Pablo Jaguada Lopez, Agapito Manuel Perez, Ernesto Nepamuceno Epifanio, Pedro Nepamuceno Epifanio, Zenobio Cervantes Gumecindo, Antonio Gonzalez Hernandez, Eleazar Manuel Otero, and Cain Gonzalez Covarrubias, through their duly authorized representatives, formally notified Defendant Tracy Dillard in a letter dated May 6, 2015 of their request that Defendant Tracy Dillard make their pay records available to them for inspection by no later than May 12, 2015.

74.     On May 11, 2015, Defendant Tracy Dillard responded to the Farmworkers' request, indicating that he would not make the records available for 30 more days.

75.     As of the date of this filing, Defendant Tracy Dillard has not made any of the pay records available to the Farmworkers or their representatives for inspection, nor have they responded to the Farmworkers' subsequent offer to travel in person to the storage facility where the records are kept to inspect and copy them.

76.     Defendant Tracy Dillard's failure to make the properly requested earnings records available to the Farmworkers within 72 hours as described above violated 20 C.F.R. § 655.122(j)(2) and was also a breach of the Farmworkers' contracts with him.

77.     All conditions precedent to this action have been satisfied.

78.     All actions and omissions alleged herein were undertaken by Defendants either directly or through their agents.

## FIRST CAUSE OF ACTION: FAIR LABOR STANDARDS ACT

79.     The Farmworkers reallege and incorporate by reference the allegations set forth in paragraphs 1 through 78 of this Complaint.

80.     By failing to pay the Farmworkers the minimum wage in each workweek, Defendants violated the Farmworkers' rights under the FLSA, 29 U.S.C. § 206(a), for which the Farmworkers are entitled to relief pursuant to 29 U.S.C. § 216(b).

81.     For these violations, the Farmworkers suffered injury and are entitled to their unpaid minimum wages, an equal amount in liquidated damages, costs of court, and attorney's fees pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION: BREACH OF CONTRACT

82.     The Farmworkers reallege and incorporate the allegations set forth in paragraphs 1 through 81 of this Complaint.

83.    The clearance orders described in this Complaint constituted employment contracts between Defendant Tracy Dillard and each Farmworker as described in paragraphs 17−22, 37 and 38 above.

84.    The Farmworkers performed all material contractual obligations of employment that they were called upon to perform under their employment contracts with Defendant Tracy Dillard.

85.    Defendant Tracy Dillard failed to perform his obligations under his employment contracts with each Farmworker and materially breached contractual obligations owed to each Farmworker during the course of the 2014-2015 season.

86.    Defendant Tracy Dillard's breaches of the Farmworkers' employment contracts caused the Farmworkers substantial injuries, including pecuniary harm in the form of lost wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter an order:

(a) Declaring that Defendants violated Plaintiffs' rights under the minimum wage provisions of the FLSA at 29 U.S.C. § 206(a);

(b) Granting judgment in favor of Plaintiffs on their FLSA minimum wage claim as set forth in their First Cause of Action and awarding them their unpaid minimum wages, an equal amount in liquidated damages, costs of court, and attorney's fees;

(c) Granting judgment in favor of Plaintiffs on their contract claim as set forth in

their Second Cause of Action and awarding them their damages for Defendant

Tracy Dillard's contractual breaches;

    (d) Awarding Plaintiffs pre- and post-judgment interest, as allowed by law;

    (e) Awarding Plaintiffs their costs; and

    (f) Granting such other relief as this Court deems just and appropriate.

        Respectfully submitted,

        **/s/ Kevin L. Terry**
        Kevin L. Terry
        New York Bar No. 5285333
        kterry@trla@org
        SOUTHERN MIGRANT LEGAL SERVICES
        A PROJECT OF TEXAS RIOGRANDE
        LEGAL AID, INC.
        311 Plus Park Blvd., Ste. 135
        Nashville, Tennessee 37217
        Telephone: (615) 750-1200
        Facsimile: (615) 366-334

        **/s/ Douglas L. Stevick**
        Douglas L. Stevick
        Missouri Bar No. 65684
        dstevick@trla.org
        TEXAS RIOGRANDE LEGAL AID, INC.
        5439 Lindenwood Ave.
        St. Louis, Missouri 63109
        Telephone: (314) 449-5161

        **/s/ Caitlin Berberich**
        Caitlin Berberich
        Tennessee Bar No. 025780
        cberberich@trla.org
        SOUTHERN MIGRANT LEGAL SERVICES
        A PROJECT OF TEXAS RIOGRANDE
        LEGAL AID, INC.
        311 Plus Park Blvd., Ste. 135
        Nashville, Tennessee 37217
        Telephone: (615) 750-1200
        Facsimile: (615) 366-3349

**/s/ McKenzie Cantrell**
McKenzie Cantrell
Kentucky Bar No. 94897
mckenzie@kyequaljustice.org
KENTUCKY EQUAL JUSTICE CENTER
455 S. Fourth St., Ste. 1071
Louisville, Kentucky 40202
Telephone: (502) 333-6019
Fascimile: (502) 416-0022

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

Defendants have not yet made an appearance in this case.  However, I hereby certify that a true and correct copy of the foregoing will be served upon Defendants in compliance with the Federal Rules of Civil Procedure.

**/s/ Kevin L. Terry** _____